UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ANTHONY DePASQUALE and JUSTIN AARON
RIVERA,

                    Plaintiffs,

                    -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT (NYPD);

Individually and in Their Official Capacities as New
York City Police Officers SGT. CESAR PLANCO,
Police Officer JOSEPH PAPASIDERO, and Police
Officer CARLOS MARTINEZ,  being the officers
directly actively involved in the events involving
plaintiffs on August 5, 2011, referred to in the aggregate
herein as JOHN DOES 1, 2 and 3;

Individually and in Their Official Capacities, JOHN
DOES 4 - 12, being police officers and non-uniformed
employees of the New York City Policy Department, the
identity and number of whom is presently unknown;

Individually and in Their Official Capacities as New
York City Police Officers JOHN DOES 13-20, being
supervisory police officers of the City of New York, the
identity and number of whom is presently unknown;

And

Individually and in Their Official Capacities, JOHN
DOES 21-24, being non-uniformed employees of the
City of New York, the identity and number of whom is
presently unknown, whose official duties included and
include oversight over investigations of reports of police
brutality;

                    Defendants.

Case No.:    2012cv7637 (AKH)

AMENDED COMPLAINT AND
JURY DEMAND

PLAINTIFFS ANTHONY DePASQUALE, ("DePasquale"), and JUSTIN AARON RIVERA, ("Rivera"), (collectively, "plaintiffs"), by and through their attorneys, The Law Offices of Heriberto J. Rodriguez, PLLC, allege upon information and belief as follows:

<u>INTRODUCTION</u>

1.     This action arises from barbaric and cruel acts of police brutality that epitomize the depths to which street officers in New York can abuse their authority to victimize, abuse and terrorize citizens, in this instance, minors, together with the City of New York's subsequent attempts to both cover up the incident in question and conceal the identities of the perpetrators.

2.     This action accordingly first and foremost seeks compensation of the unconstitutional and tortious conduct of police officers, acting jointly and in concert, who attacked, physically abused, terrorized and abducted plaintiffs, beginning on August 5, 2011, ("the Attack"), and who continue to engage in a program of attempted intimidation up through the present.   Relief is further sought, however, based on the manifest failure of supervisory officers to prevent out-of-control and vicious officers from having contact with members of the public, in permitting said officers to patrol the Bronx nominally in discharge of their sworn duties as law enforcement officers despite their knowledge that these officers were and remain unfit for duty, and in failing to prevent said officers from continuing to victimize plaintiffs and other members of the public even after the events of August 5, 2011, were brought to the attention of the City of New York, ("the City"), and the New York City Police Department, ("NYPD").

3.     Finally, compensation is sought herein for the conduct of officers and non-uniformed employees of the City and NYPD who have attempted and continue to conceal the identities of the three (3) officers who perpetrated the Attack.   Thus, compensation is sought

herein for the deliberate indifference and negligence with respect to customs, policies and practices that permitted, condoned and preserved a "code of silence" environment in which the most violent police officers, including the three officers directly responsible for the Attack, believed they would be insulated from swift and effective investigation, prosecution and conviction for even their most brazen acts of brutality.

4.      The inevitable result of this institutional indifference is the extraordinary injustices and injuries inflicted upon plaintiffs DePasquale and Rivera.

## FACTUAL OVERVIEW

5.      During the evening hours of August 5, 2011, plaintiffs DePasquale and Rivera were standing on a public sidewalk when they were suddenly assaulted by a group of three (3) NYPD plainclothes officers, Sgt. CESAR POLANCO, ("Polanco"), Police Officer JOSEPH PAPSIDERO, ("Papasidero"), and Police Officer CARLOS MARTINEZ, ("Martinez").

6.      These officers lacked any reasonable suspicion that either DePasquale or Rivera were engaged in any illegal conduct, much less a reasonable  belief that a need or justification existed for use of deadly force to physically seize either DePasquale or Rivera.

7.      Rivera was threatened with deadly force, physically seized, coerced, abducted, and terrorized for an extended period of time.  Rivera was furthermore transported against his will under threat of lethal force to a location where he was forced to watch while one of the aforesaid officers beat DePasquale and continued to beat DePasquale even after DePasquale was unconscious.

8.      DePasquale sustained multiple skull and jaw fractures, loss of teeth, and permanent nerve damage to his face.

9.    Both DePasquale and Rivera were further threatened to remain silent about the attack on DePasquale or they would be killed.

10.    At the time of the aforesaid events, neither DePasquale nor Rivera was over the age of eighteen, neither of them weighed more than 150 lbs, and neither of them offered any threat at any time towards the personal safety of John Doe's 1, 2 or 3 or otherwise engaged in any conduct whatsoever sufficient to justify John Doe 1, 2 or 3's use of physical force.

11.    Upon information and belief, all of the above events were the foreseeable and inevitable result of the manner in which Polanco, Papasidero and Martinez routinely conducted themselves and continue to conduct themselves. By nonetheless allowing Polanco, Papasidero and Martinez to remain active duty officers, each supervisory officer and non-uniformed employee of the City and/or NYPD condoned and/or was complicit in the Attack.

12.    Moreover, subsequent to the date of the Attack, employees of the City and/or NYPD concealed the identities of Polanco, Papasidero and Martinez, and allowed each of these three (3) officers to avoid any administrative and/or criminal repercussions for the Attack.

13.    The foregoing concealment and complicity has encouraged Polanco, Papasidero and Martinez to engage in further acts of intimidation and harassment towards DePasquale and Rivera. Polanco, Papasidero and Martinez, relying on their official authority and acting under color of law, have continued to harass, to attempt to intimidate and attempt to instill fear in DePasquale and Rivera that if either of them seek relief, each would be harmed.

14.    All the foregoing acts have been perpetrated under color of law and without any reasonable belief in the legality or legal justification therefor.

15.    The ultimate responsibility for the horrific events of the Attack and its continuing aftermath lies not only with the barbaric perpetrators of the Attack itself but also with the City

due to the City's and supervisory officers' deliberate indifference to constitutional deprivations resulting from the conduct, past, present and future, of Polanco, Papasidero and Martinez.

16.    Even while ostensibly promulgating formal policies that require officers to respect the civil rights of citizens, the City and supervisory and administrative officers of the Police Department, including but not limited to John Does 4-20, and including but not limited to administrative and supervisory personnel in the 45th Precinct, have, by turning a blind eye to the conduct of Polanco, Papasidero and Martinez, consciously permitted a contrary operative policy to apply.

17.    Moreover, together, the City and NYPD, its supervisory officers, agents, and employees, have jointly encouraged a "code of silence" or "blue wall" while permitting, encouraging, and rewarding officers who engage in acts of brutality and intimidation towards members of the same community the NYPD is sworn to protect and serve.

18.    The policies, customs and practices of the City and NYPD have promoted an atmosphere in which the very worst police officers feel assured that evidence of their misdeeds depriving citizens of their civil rights, no matter how unlawful, will be hidden.  Multiple prior efforts to address this problem, including substantial awards of compensatory damages to prior victims, have clearly failed to prevent this dynamic from continuing to set the tone for how certain officers in certain precincts, including but not limited to Polanco, Papasidero and Martinez and other officers of the 45th Precinct, confront and abuse citizens, including the plaintiffs herein.  This atmosphere undermines legitimate law enforcement and ultimately endangers not only its direct victims but the community as a whole, due to inevitable fear of loss of trust in the City and NYPD's officers.

19.    With the imposition of punitive damages against all defendants with the exception of the City, plaintiffs hope to deter defendants and bring an end to this intolerable cycle of violence, victimization and silence.

## JURISDICTION

20.    This action is brought pursuant to Sections 1981, 1983, 1985, 1986 and 1988 of Title 42 of the United States Code; the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

21.    This Honorable Court has subject matter jurisdiction for the within action pursuant to Sections 1331, 1343(1-4) and 2202 of Title 28 of the United States Code.

22.    Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate State law claims pursuant to Section 1367 of Title 28 of the United States Code.

23.    The within Honorable Court is a proper venue for the within action insofar as a substantial portion of the transactions and occurrences giving rise to the within action occurred in within the geographical boundaries of the within Court's district, plaintiffs are residents of the State of New York and the within district.  Venue accordingly is proper in this district pursuant to Section 1391(b) of Title 28 of the United States Code.

## THE PARTIES

24.    Plaintiff ANTHONY DePASQUALE, ("DePasquale"), is a resident of the City and State of New York.

25.    Plaintiff JUSTIN AARON RIVERA, ("Rivera"), is a resident of the City and State of New York.

26.    Defendant the CITY OF NEW YORK, ("the City"), is a municipal corporation within the State of New York and the public employer of the police officers named as defendants in this action.

27.    Defendant NEW YORK CITY POLICY DEPARTMENT, ("NYPD"), is an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the Charter, Administrative Code and Rules of the City of New York.

28.    In addition to the facts alleged in the following paragraphs, the following defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or City of New York:

a.    Defendant Sgt. Cesar Polanco, ("Polanco"), Shield No. 5044, presently assigned to the 45th Precinct, upon information and belief, was and is a police officer employed by the NYPD and City, who was, at all times herein acting in such capacity as the agent, servant and employee of defendant City and NYPD.

b.    Defendant Police Officer Joseph Papsidero, ("Papasidero"), Shield No. 27129, presently assigned to the 45th Precinct, upon information and belief, was and is a police officer employed by the NYPD and City, who was, at all times herein acting in such capacity as the agent, servant and employee of defendant City and NYPD.

c.    Defendant Police Officer Carlos Martinez, ("Martinez"), Shield No. 649, upon information and belief, was and is a police officer employed by the NYPD and City, who was, at all times herein acting in such capacity as the agent, servant and employee of defendant City and NYPD.

d.     The names, shield numbers and ranks of Polanco, Papasidero and Martinez are set forth herein upon information and belief based on discovery furnished to plaintiffs by defendant City, as well as a Civilian Complaint Review Board determination, dated February 5, 2013, which addressed specific allegations of misconduct assigned to each officer.   At this time, however, plaintiffs remain unable to match the three (3) names supplied in discovery to the three (3) individuals  whose conduct on August 5, 2011, is described in more detail herein.  Accordingly, although the names of three officers in the aggregate have been supplied and are set forth herein, for purposes of the factual allegations herein, plaintiffs are constrained to continue to designate the three officers in question as John Does 1, 2 and 3.

e.     John Does 4 - 12 were and are police officers and non-uniformed employees of defendant NYPD, the identity and true number of whom is presently unknown, who became aware of the Attack after it occurred and have failed to take action required pursuant to their legal duties, oaths of service and/or other requirements of law;

f.     Defendants John Does 13 - 20 were and are police officers and non-uniformed employees of defendant NYPD, the identity and true number of whom is presently unknown, who functioned as supervisors to John Does 1, 2 and 3 prior to, on the day of, and subsequent to the Attack;

g.     Defendants John Does 21 - 24 were and are non-uniformed employees of the City of New York, the identity and number of whom is presently unknown,

whose official duties included and include oversight over investigations of reports of police brutality.

NOTICE OF CLAIM

29.    Plaintiffs, in furtherance of their State-law causes of action, filed timely notices of claim against the City in compliance with General Municipal Law Section 50.

30.    More than thirty (30) days have elapsed since service of said notices and the City has failed and refused to pay or adjust the claim.

31.    On December 5, 2011, plaintiff Rivera, in compliance with General Municipal Law Section 50-h, submitted to an examination and testified under oath at a hearing conducted by legal representative of the City.

32.    On December 5, 2011, plaintiff DePasquale, in compliance with General Municipal Law Section 50-h, submitted to an examination and testified under oath at a hearing conducted by legal representative of the City.

33.    The within action has been commenced within one (1) year and ninety (90) days after the happening of the events upon which these claims arise.

FACTUAL AND GENERAL ALLEGATIONS

34.    On August 5, 2011, at approximately 9:00 PM, plaintiffs Rivera and DePasquale were walking on a public sidewalk adjacent to the overpass across the Throgs Neck Expressway in the vicinity of the intersection of the Throgs Neck Expressway and Lafayette Avenue in the County of Bronx, City and State of New York.

35.    Without any reasonable basis for suspecting any criminal conduct, defendants Polanco, Papasidero and Martinez approached plaintiffs in an unmarked vehicle at a high rate of speed.[1]

36.    John Doe 1, the operator of the vehicle, (either Polanco, Papasidero or Martinez), drove the vehicle in the opposite direction of traffic and accelerated towards plaintiffs, only stopping after he had mounted the curb and driven the vehicle up on to the sidewalk on which plaintiffs were walking.

37.    When plaintiffs DePasquale and Rivera observed the on-coming vehicle, they were put in reasonable fear that they were being threatened with deadly force, and they each ran.

38.    John Doe 2, (either Polanco, Papasidero or Martinez), exited the vehicle and pursued DePasquale on foot.

### P.O. JOHN DOE 2 BRUTALIZES DePASQUALE

39.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

40.    DePasquale initially fled because he was in reasonable fear that he was being threatened with bodily harm and had not received any request, lawful or otherwise, to stop in order to submit to reasonable inquiry from a police officer.

41.    After running several blocks, DePasquale attempted to hide behind bushes located adjacent to Throgmorton Avenue roughly midway between Barkley Avenue and Lafayette Avenue.

---

[1] The names, shield numbers and ranks of Polanco, Papasidero and Martinez are set forth herein upon information and belief based on discovery furnished to plaintiffs by defendant City, as well as the results of Civilian Complaint Review Board determination, dated February 5, 2013, addressing specific allegations of misconduct assigned to each officer. At this time, however, plaintiffs remain unable to match the three (3) names supplied in discovery to the three (3) individuals whose conduct on August 5, 2011, is described in more detail herein. Accordingly, although the names of three three officers in the aggregate have been supplied and are set forth herein, for purposes of the factual allegations herein, plaintiffs are constrained to continue to designate the three officers in question as John Does 1, 2 and 3.

42.    John Doe 2 pursued DePasquale on foot, growing increasingly frustrated that he was unable to catch and/or locate him.

43.    John Doe 2 perceived DePasquale's flight to be a personal insult, affront to his status as a police officer, and challenge to his authority.

44.    John Doe 2 lacked any reasonable legal basis to apprehend DePasquale, attempt to apprehend DePasquale, seize DePasquale's person, and/or believe that use of force to apprehend DePasquale was reasonable, necessary or justified.

45.    John Doe 2 at all times lacked any reasonable belief that DePasquale had committed any criminal offense and/or was about to commit a criminal offense.

46.    When John Doe 2 ultimately found DePasquale, John Doe 2 drew his sidearm, aimed it at DePasquale's head at point blank range, identified himself for the first time as a police officer, and stated, "stop or I will blow your fucking head off."

47.    DePasquale raised his hands and refrained from offering any threat or insult.

48.    John Doe 2's response to DePasquale's surrender was to strike DePasquale on the left side of his face with sufficient force to cause DePasquele to lose consciousness.

49.    Upon information and belief, after DePasquale was unconscious, John Doe 2 further struck him about the head and body with his sidearm and furthermore kicked him in the abdomen, groin, head and shoulders.

### P.O. JOHN DOE'S 1 AND 2 BRUTALIZE RIVERA

50.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

51.    After DePasquale fled on foot, pursued by John Doe 2, John Doe 1, (either Polanco, Papasidero or Martinez), driving, accompanied by John Doe 3, (either Polanco,

Papasidero or Martinez), seated in the front passenger seat of the aforesaid vehicle, pursued Rivera in the car.

52.    John Doe 1 blocked Rivera's path by driving the vehicle once again up on to the sidewalk on which Rivera was running.  John Doe 1 thereupon identified himself as a police officer by rolling down the driver-side window of the vehicle, leaning out, informing Rivera that he was a police officer and informing Rivera that if he did not stop running, "I will fucking shoot you."

53.    Rivera stopped running.

54.    Without legal cause, John Doe 1 and John Doe 3 forcefully handcuffed Rivera's hands behind his back, threw him against the hood of the aforesaid car, and permitted him to forcefully fall to the concrete ground.  John Doe 1 thereafter instructed John Doe 3 to remain with Rivera and departed, in the car, leaving Rivera crumpled on the sidewalk.

55.    John Doe 3 searched Rivera.  Although he found no contraband, and had no probable cause to retain custody of Rivera, John Doe 3 kept Rivera handcuffed and lying on the ground.

56.    John Doe 1 subsequently returned in the vehicle.

57.    Upon his return, John Doe 1 gleefully asked Rivera if he knew "how fucked up" his friend was now.

58.    Rivera was placed in the back seat of the car, John Doe 3 got into the back seat next to him, and John Doe 1 drove the vehicle to the aforesaid location on Throgmorton Avenue between Barkley Avenue and Lafayette Avenue.

59.    Upon their arrival at the aforesaid location between Barkley Avenue and Lafayette Avenue on Throgmorton Avenue, Rivera observed DePasquale lying on the ground, upon information and belief, bleeding profusely from the mouth, legs, head and arms.

60.    Rivera observed John Doe 2 repeatedly kicking Rivera.

61.    Upon information and belief, John Doe's 1 and 3 watched as John Doe 2 continued to strike DePasquale.

62.    As police officers, both John Doe 1 and 3 had a legal duty to prevent John Doe 2 from continuing to brutalize DePasquale.

63.    While watching John Doe 2 continue to strike DePasquale, John Doe's 1 and 3 informed Rivera that he was "lucky" that his friend was the one receiving the beating rather than himself.

64.    At no time did John Doe 1 or John Doe 2 make any effort to intervene and/or otherwise protect DePasquale, who was unconscious, from further injury.

65.    Eventually, John Doe 2 ceased striking DePasquale's inert form and walked over the parked vehicle in which Rivera sat, accompanied in the back seat by John Doe 3 and John Doe 1 in the driver seat.

66.    DePasquale regained consciousness and struggled to sit up as John Doe's 1, 2 and 3 laughed at his condition.

67.    Due to the head trauma inflicted on him by John Doe 2, DePasquale, upon regaining consciousness, was initially unable to remember or otherwise process the sequence of events that led to him being prostrate on the ground with grievous bodily injuries.

68.    John Doe's 1, 2, and 3, in Rivera's presence, laughed at DePasquale's condition and informed DePasquale that he had been assaulted by "a gang."

69. John Doe's 1, 2 and 3 informed Rivera that if he revealed the truth about how DePasquale was injured, he would suffer a similar fate.

70. John Doe's 1, 2 and/or 3 placed a call for an ambulance to respond to the scene.

71. Rivera was ordered by John Doe's 1, 2 and 3 that he was to lie to the responding EMT's and tell them that he and DePasquale had been "jumped" by a "gang". Rivera was further informed that if he failed to comply, both he DePasquale would be killed.

72. When emergency medical technicians, ("EMT's"), arrived at the scene, John Doe's 1, 2, and 3 misinformed the EMT's about the sequence of events that had led to DePasquale's injuries and claimed that they had found DePasquale, already bleeding, in response to a request for assistance by Rivera.

73. DePasquale was thereafter transported by ambulance to Jacobi Hospital.

74. At Jacobi Hospital, physicians determined that DePasquale had sustained multiple fractures to his jaw, lost several teeth, and that his fractures required surgery.

75. After DePasquale was transported from the scene, John Doe's 1, 2 and 3 continued to threaten Rivera's person and otherwise continued efforts to intimidate him by means of threats directed at him as well as threates that his friend, DePasquale, would be the target of further attack.

76. John Doe's 1, 2 and 3 further informed Rivera that if he failed to agree to cooperate, they would arrange to have him arraigned and incarcerated in general population, and make sure information was disseminated that he was the close relative of police officers. This threat was made notwithstanding the absence of any legitimate probable cause to believe that Rivera had committed any criminal act and solely for the illicit purpose of putting Rivera in fear for his personal safety and liberty.

77.     John Doe's 1, 2 and 3 also reiterated to Rivera that if he told the EMT's or anyone else what had occurred, he would be beaten to death and/or shot, and that they would arrange for someone to inflict further violence on DePasquale at the hospital.

78.     John Doe's 1, 2 and 3 drove away from the scene of the attack on DePasquale with Rivera still handcuffed in the back seat of their vehicle.

79.     At no time during the events described above did John Doe's 1, 2, and/or 3 have probable cause for the arrest of Rivera.

80.     At no time during the events described above did John Doe's 1, 2 and/or 3 have legal cause or excuse to seize Rivera's person.

81.     Notwithstanding their use of handcuffs on Rivera, at no time did John Doe 1, 2 or 3 advise Rivera that he was under arrest.

82.     John Doe's 1, 2 and 3 subjected Rivera to a prolonged course of verbal intimidation, threats of extreme physical harm, and related harassment before ultimately transporting Rivera to the home of his mother at 2752 Latting Street, Bronx, NY.

<u>DEFENDANTS' COVER-UP BEGINS</u>

83.     Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

84.     Almost immediately after the events described above, plaintiffs informed NYPD Internal Affairs as well as the Civilian Complaint Board that they had been subjected to a brutal attack by police officers acting in the putative course and furtherance of their duties.

85.     Upon information and belief, representatives of the NYPD Internal Affairs bureau interviewed Rivera and DePasquale as part of a putative investigation into the incident.

86.    Both Rivera and DePasquale provided physical descriptions of the officers who attacked them, together with detailed descriptions of the vehicle the officers had been operating and the clothes the officers had been wearing.

CONTINUING EFFORTS BY DEFENDANTS TO INTIMIDATE RIVERA AND
DePASQUALE INTO REMAINING SILENT

87.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

88.    Subsequent to the events described above, John Does 1, 2, and 3 have confronted both plaintiff Rivera and plaintiff DePasquale on several occasions.  Each such encounter has been orchestrated by John Doe's 1, 2 and 3 in order to emphasize each officer's putative invulnerability and power and to reiterate, implicitly and expressly, the threat of dire consequences in the event either plaintiff herein seeks appropriate lawful redress for John Doe 1, 2 and 3's violation of plaintiffs' civil rights.

89.    Each subsequent time plaintiffs have encountered them, John Does 1, 2 and 3 have been in plain clothes, and on each subsequent occasion, plaintiffs have been unable to otherwise obtain the actual names of any of these officers.

90.    The subsequent incidents in which Rivera has been confronted by John Doe 1, 2 and 3 have included but are not limited to the following:

a.    While sitting in a parked vehicle with his girlfriend, plaintiff Rivera was approached by John Doe 3, accompanied by additional officers.  Rivera was removed from his vehicle while John Doe 3 conducted a search, supposedly because John Doe 3 claimed to have detected the scent of marijuana.

b.    Before undertaking the aforesaid search, and in the presence of Rivera's companion, John Doe 3 handcuffed Rivera and directed him to sit, handcuffed, on the curb adjacent to his parked vehicle, in full view of all passing motorists and pedestrians, despite the absence of any probable cause or genuine need.

    c.    John Doe 3 and his assisting officers failed to find any trace of contraband, but Rivera was informed by John Doe 3 that he would "be watching."

    d.    John Doe 3 lacked any legitimate probable cause and/or consent to conduct the aforesaid search, lacked any legal justification for handcuffing Rivera while the search was being conducted, and undertook the above search solely as a mechanism of and perpetuation of the intimidation and threats that had been communicated originally on August 5, 2011.

91.    Plaintiff DePasquale has encountered John Doe 2 in local establishments in the vicinity of his home in the Bronx. At the time of each such encounter, John Doe 2 has asked whether he and DePasquale "know each other," in order to reiterate his threat of further violence in the event DePasquale reveals the extent of their prior encounter.

92.    At all times mentioned herein, John Does 1, 2 and 3 have been under the supervision of line officers and supervisory NYPD personnel. To the extent that each of them manifestly believes himself to be beyond reach of the law and immune from sanction for their conduct, this belief is the direct result of implicit and explicit communications from NYPD supervisors that have perpetuated an adversarial relationship between NYPD officers and members of the community while assuring officers that their acts of brutality will be suppressed.

93.    Moreover, despite the information furnished by plaintiffs to NYPD and its putative investigators subsequent to the event described above, at no time to and through the present has any meaningful attempt been made - as by a photographic array or the like - to permit plaintiffs to identify the officers principally and directly responsible for the Attack.

94.    Rather than legitimately undertake an investigation to identify the perpetrators, NYPD has deliberately frustrated all efforts to investigate this incident, have concealed material information regarding the identities of the three (3) officers who were principally and initially involved.

95.     NYPD's cover-up of the events described above is the direct result of unofficial but prevailing policy, custom and practice among precincts in the Bronx of suppressing evidence of criminal misconduct, violation of civil rights, and general police brutality.

96.     Upon information and belief, uniformed and non-uniformed employees of the NYPD as well as the City have worked together for years to encourage and maintain the "code of silence" also known as the "blue wall".

97.     One policy which encourages the "blue wall" is the "48 hour rule" codified in the Patrol Guide, Section 118-9.   This section requires that an officer subject to an official investigation must be given two (2) business days' notice before being interrogated.  An officer who is merely suspected of being a witness to another officer's criminal conduct must be given four (4) hours before the commencement of questioning.   The language is limited to administrative investigations and should, in theory, have no adverse impact on criminal investigation of the sort that should have been initiated in response to the information reported by plaintiffs regarding the events described above.  However, upon information and belief, the custom is to apply the aforesaid rule to criminal and internal-affairs investigations as well.

98.     Consequently, as a rule, no police officer suspected of criminal wrongdoing gets questioned by anyone in law enforcement for at least two (2) days.

99.     The aforesaid delay impedes and prejudices investigations into police misconduct and permits, *inter alia*, the subjects of such investigations to eliminate forensic evidence, fabricate potential exculpatory explanations, and otherwise evade apprehension.

<u>THE ATTACK WOULD NOT HAVE OCCURRED BUT FOR DELIBERATE
INDIFFERENCE TO THE PROCLIVITIES OF THE RESPONSIBLE OFFICERS</u>

100.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

101.    Upon information and belief, John Does 13-20 were responsible for training, supervising, and monitoring John Does 1, 2 and 3, on and before August 5, 2011.

102.    Upon information and belief, prior to August 5, 2011, John Does 1, 2 and 3 demonstrated behavioral tendencies, proclivities, overt and inappropriate violent habits, and other similar preferences for disproportionately violent resort to violence in the course of dealing with members of the public.

103.    Upon information and belief, prior to and on August 5, 2011, John Does 13 - 20 exhibited deliberate indifference to the aforesaid proclivities of John Does 1, 2 and 3, and moreover encouraged and permitted said officers to act in a more aggressive manner towards members of the public.

104.    Subsequent to the events described above, more particularly the Attack, John Does 13-20 became aware of the aforesaid conduct of John Does 1, 2 and 3.

105.    Subsequent to the events described above, John Does 4-12 also became aware of the conduct of John Does 1, 2 and 3, though John Does 4-12 had not, prior to the events described above, had direct supervisory or command roles pertaining to the duties of John Does 1, 2 and/or 3 on August 5, 2011.

106.    Pursuant to the oath of office and the written rules and regulations promulgated by the NYPD, line officers and command personnel have an affirmative duty to intercede to prevent crimes and other misconduct committed by officers and to report such conduct whenever they become aware of it.

107.    Despite the aforesaid oath of office, written rules and regulations, John Does 4 – 20 refrained and refused to report evidence that they came to possess regarding the brutal, illegal

and tortious conduct of John Does 1, 2, and 3 including but not limited to the Attack described herein on August 5, 2011.

108.    As a direct and proximate result of the deliberate indifference of John Does 4 - 20, John Does 1, 2 and 3 were permitted to remain on active duty, to engage in police work that brought them into foreseeable contact with members of the community, including plaintiffs, and all despite their unfitness for duty, proclivity towards violence, manifest disregard for the civil rights of members of the community and, upon information and belief, other demonstrated personality and behavior characteristics that demonstrated that each of them was unfit for duty.

109.    Upon information and belief, no attempt was made by NYPD to identify the perpetrators of the attack.  Instead, NYPD and the City attempted to fabricate facts to explain how DePasquale had come to be injured that did not involve NYPD officers.

110.    At no time from the date of the foregoing events up until the date the instant action was filed has NYPD provided plaintiffs Rivera and/or DePasquale with the names of any officers and/or offered DePasquale and/or Rivera an opportunity to view a photo array in order to identify the individuals who were responsible for the attack.

111.    Upon information and belief, John Does 21 - 24 are non-uniformed employees of the City of New York who shared responsibility for investigating and otherwise responding to allegations of police brutality on and after August 5, 2011.  Upon information and belief, the aforesaid individuals, rather than working with plaintiffs and their representatives to help uncover the identifies of John Does 1, 2 and 3, further facilitated the cover-up of the events described above and impeded efforts by plaintiffs to identify their attacks.

112.    The complicity after the fact of John Does 21 - 24 with the conduct of John Does 1, 2 and 3, was undertaken without any legal justification and in further violation of plaintiffs' civil rights.

113.    The aforesaid conduct by John Does 21 - 24 has perpetuated and extended the threats that were originally communicated by John Does 1, 2 and 3, and has thereby exacerbated and aggravated the consequences of the original attack.

<u>DAMAGES</u>

114.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

115.    As a direct and proximate result of the aforesaid acts of defendants, plaintiff DePasquale suffered the following injuries and damages:

      a.    Violation of his rights under the First, Fourth, Fifth, Eight, Thirteenth and Fourteenth Amendments to the United States Constitution;

      b.    Loss of physical liberty;

      c.    Life-threatening physical injuries, pain and suffering, extreme fear, emotional trauma, permanent nerve damage and disfigurement to the face, neck, jaw and head, all requiring the expenditure of money for treatment expected to last the rest of his life;

      d.    Economic damages including loss of income; and

      e.    Humiliation, embarrassment and injury to reputation.

116.    As a direct and proximate result of the aforesaid acts of defendants, plaintiff Rivera suffered the following injuries and damages

      a.    Violation of his rights under the First, Fourth, Fifth, Eight, Thirteenth and Fourteenth Amendments to the United States Constitution;

      b.    Loss of physical liberty;

      c.    Physical injuries, pain and suffering, extreme fear, emotional trauma;

    d.      Economic damages including loss of income; and

    e.      Humiliation, embarrassment and injury to reputation.

117.    The physical, psychological and economic consequences of the defendants' actions continue to date, and upon information and belief, will continue into the future.

## CAUSES OF ACTION

### COUNT I
### (42 U.S.C. § 1983 Conspiracy) (DePasquale)

118.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

119.    The individual defendants, under color of law, conspired with each other, and with others, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten and intimidate plaintiff DePasquale in the free exercise and enjoyment of the rights and privileges and equal protection of law secured to him by the Constitution of the United States of America, including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest, false imprisonment, and the delay and denial of medical attention.

120.    Upon information and belief, John Does 4-20, as NYPD officers, and John Does 21-24, as employees of the City of New York, became willing participants in joint action with John Does 1-3, all acting under color law, to further the putative purposes and goals of the NYPD, including maintaining the "code of silence" and "blue wall".

121.    The goal of the aforesaid conspiracy was to suppress proof regarding the Attack, including but not limited to information and evidence regarding John Doe 2's assault on DePasquale while he was in effect in police custody and even after he was unconscious.

122.    In furtherance of the conspiracy and to cover-up the acts of brutality, defendants John Does 4-20 and John Does 21-24, acting in concert with John Does 1-3, jointly and severally, primarily and/or vicariously engaged in the following:

    a.  Falsely arrested plaintiff DePasquale and Rivera;

    b.  Fabricated and contrived a story regarding the manner in which DePasquale sustained his injuries which was wrongfully and perjuriously reported to first responders to whom defendants owed a legal duty of truthful communication;

    c.  Although they were aware of the brutality, and were required to report it immediately, they deliberately suppressed the truth; and

    d.  Upon information and belief, submitted false police reports, statements, or testimony to support and corroborate the fabricated and false story regarding the manner in which DePasquale sustained his injuries, all to insulate John Does 1, 2 and 3, from administrative and potentially criminal sanctions.

## COUNT II
### (42 U.S.C. § 1983 Conspiracy) (Rivera)

123.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

124.    The individual defendants, under color of law, conspired with each other, and with others, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten and intimidate plaintiff Rivera in the free exercise and enjoyment of the rights and privileges and equal protection of law secured to him by the Constitution of the United

States of America, including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest and false imprisonment.

125.    Upon information and belief, John Does 4-20, as NYPD officers, and John Does 21-24, as employees of the City of New York, became willing participants in joint action with John Does 1-3, all acting under color law, to further the putative purposes and goals of the NYPD, including maintaining the "code of silence" and "blue wall".

126.    The goal of the aforesaid conspiracy that was to suppress proof regarding the Attack, including but not limited to information and evidence regarding the false arrest and assault by John Doe's 1, 2 and 3 on Rivera, as well as the use by John Doe's 1, 2 and 3 of John Doe 2's attack on DePasquale to intimidate Rivera into remaining silent.

127.    In furtherance of the conspiracy and to cover-up the acts described above, defendants John Does 4-20 and John Does 21-24, acting in concert with John Does 1-3, engaged in the following:

    a.  Falsely arrested plaintiff Rivera;

    b.  Fabricated and contrived a story regarding the manner in which DePasquale sustained his injuries which was wrongfully and perjuriously reported to first responders to whom defendants owed a legal duty of truthful communication;

    c.  Although they were aware of the brutality, and were required to report it immediately, they deliberately suppressed the truth; and

    d.  Upon information and belief, submitted false police reports, statements, or testimony to support and corroborate the fabricated and false story regarding the manner in which Rivera was taken into custody and handcuffed, despite the

absence of any formal charges ever being filed or possible, all to insulate John

Does 1, 2 and 3, from administrative and potentially criminal sanctions.


COUNT III
42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE (DePasquale)

128.   Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate

same by reference herein as though more fully set forth at length.

129.   By their conduct, defendants, under color of law, deprived plaintiff DePasquale of

his constitutional right to be free from excessive and unreasonable force.

130.   Plaintiff claims damages for the injuries set forth above.

COUNT IV
42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE (Rivera)

131.   Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate

same by reference herein as though more fully set forth at length.

132.   By their conduct, defendants, under color of law, deprived plaintiff Rivera of his

constitutional right to be free from excessive and unreasonable force.

133.   Plaintiff claims damages for the injuries set forth above.

COUNT V
42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT (DePasquale)

134.   Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate

same by reference herein as though more fully set forth at length.

135.   By their conduct and under color of law, defendants deprived plaintiff DePasquale

of his constitution right to be free from false arrest and false imprisonment.

136.   Plaintiff DePasquale claims damages for injuries set forth above.

COUNT VI
42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT (Rivera)

137.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

138.    By their conduct and under color of law, defendants deprived plaintiff Rivera of his constitution right to be free from false arrest and false imprisonment.

139.    Plaintiff Rivera claims damages for the injuries set forth above.

COUNT VII
42 U.S.C. § 1983 - FAILURE TO INTERCEDE (DePasquale)

140.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

141.    By their conduct and under color of state law, upon information and belief, defendants John Does 1 and 3 each had opportunities to intercede on behalf of plaintiff DePasquale to prevent the excessive use of force but due to their intentional conduct, negligence, and/or deliberate indifference declined or refused to do so.

142.    As a direct and proximate result, plaintiff DePasquale suffered the injuries and damages described above.

143.    Plaintiff DePasquale claims damages for the injuries set forth above.

COUNT VIII
42 U.S.C. § 1983 - FAILURE TO INTERCEDE (Rivera)

144.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

145.    By their conduct and under color of state law, upon information and belief, defendant John Does 1 and 3 each had opportunities to intercede on behalf of plaintiff Rivera to prevent the false arrest, excessive use of force, and other violations of plaintiff Rivera's rights by

the other officers involved in the Attack, but due to their intentional conduct, negligence, and/or deliberate indifference declined or refused to do so.

146.    As a direct and proximate result, plaintiff Rivera suffered the injuries and damages described above.

147.    Plaintiff Rivera claims damages for the injuries set forth above.

COUNT IX

42 U.S.C. §§ 1981, 1983 - FIRST, FOURTH, AND
FOURTEENTH AMENDMENT VIOLATIONS

148.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

149.    Defendants, without probable cause or due process of law, and acting under color of law, deprived plaintiffs Rivera and DePasquale of equal protection of law, freedom from unreasonable seizure, and free access to seek redress in the courts.

150.    At all times mentioned herein, defendants lacked a reasonable or good-faith basis for believing that their conduct was legal, authorized by law, or necessary due to exigent circumstances then and there existing.

151.    The defendants engaged in a cover-up in order to conceal the wrongful and unlawful conduct taken against each plaintiff herein.

152.    The defendants' efforts to conceal the truth continue to and through the present, to the continuing harm and detriment of each plaintiff.

153.    As a direct and proximate result, plaintiffs Rivera and DePasquale each suffered the injuries and damages described above.

154.    Plaintiffs each claim damages for the injuries set forth above.

COUNT X
42 U.S.C. § 1986 - ACTION FOR NEGLECT TO PREVENT (DePasquale and Rivera)

155.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

156.    Upon information and belief, subsequent to August 5, 2011, to and through the present, defendants John Does 4-12 had knowledge that a cover up and conspiracy to cover up the brutality perpetrated against plaintiffs DePasquale and Rivera was in progress, had the power to prevent or aid in preventing the cover-up and conspiracy from continuing and neglected or refused to do so.

157.    With reasonable diligence, defendants John Does 4-12 could have promptly reported the brutality to superior officers.  The failure by these defendants to do so contributed to the continuing injuries that have been suffered by plaintiffs DePasquale and Rivera, including their deprivation of ready access to the court and protection from continuing harassment and efforts at intimidation.

158.    Plaintiffs each claim damages for the injuries set forth above

COUNT XI
42 U.S.C. § 1983 - SUPERVISOR LIABILITY (DePasquale and Rivera)

159.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

160.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

161.    Defendants John Does 13-20 were, at all times relevant, supervisory personnel at the 45th prcinct or in the NYPD, with oversight responsibility for line officers John Does 1, 2 and 3.  John Does 13-20 were moreover responsible for training, instruction, supervision and

discipline of these officers as well as such officers who conspired and were complicit after the fact and thereby became accessories after the fact.

162.    Upon information and belief, John Does 13-20 had received complaints about the conduct of John Does 1, 2 and 3 and other officers in the 45th Precinct, knew about these past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of reasonable diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to members of the public, including plaintiffs herein.

163.    Defendants John Does 13-20 knew, or in the exercise of reasonable diligence would have known that the conduct of defendants John Does 1, 2 and 3 displayed toward plaintiffs was likely to occur.

164.    Upon information and belief defendants John Does 13-20 failed to take preventative and remedial measures to guard against the brutality and cover up committed by John Does 1, 2 and 3.

165.    Upon information and belief, had John Does 13-20 taken appropriate action, plaintiffs would not, upon information and belief, have been injured.

166.    The failure of John Does 13-20 to supervise and discipline John Does 1, 2 and 3 and other officers of the 45th Precinct who became complicit in and/or assisted with the cover-up of the conduct perpetrated by John Does 1, 2 and 3 amounted to gross negligence, deliberate indifference, or intentional misconduct which directly and proximately caused the deprivations suffered by plaintiffs herein.

167.    Plaintiffs each claim damages for the injuries set forth above.

COUNT XII
42 U.S.C. § 1983 – MONELL CLAIM (DePasquale and Rivera)

168.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

169.    Prior to August 5, 2011, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens.

170.    The aforesaid policies and customs caused the rights of plaintiffs herein to be violated.

171.    Upon information and belief, it was the custom and/or policy of the City to inadequately investigate and improperly respond to civilian complaints of police misconduct. Instead, acts of brutality, such as though committed by John Does 1, 2 and 3 against plaintiffs herein, were tolerated by the City, and even traditionally encouraged as a supposedly necessary albeit illicit mechanism for emphasizing an aggressive and authoritarian police presence in the community thought to be necessary to accomplish legitimate law enforcement objectives.

172.    Upon information and belief, the Internal Affairs Bureau, ("IAB"), and the Civilian Complaint Review Board, ("CCRB"), have substantially failed to investigate, uncover, deliberate and/or discipline offenders.  Since the CCRB became independent in 1993, to and through the events that resulted in the infamous attack on Abner Louima, CCRB received 18,336 complaints, yet NYPD dismissed only one officer as a result of CCRB investigations, a rate less than one percent (1%) of one percent (1%) of the matters investigated, despite substantiation of the complaints by CCRB in at higher percentage of the cases it investigated.   Upon information and belief, subsequent to the publicity surrounding the Abner Louima case, and despite the revelation in that matter of systemic indifference to institutionalized and otherwise widespread customs and practices in blatant derogation of the civil and constitutional rights of public

citizens, the rate of NYPD discipline of officers as a result of CCRB investigations has not substantially increased.

173.   Upon information and belief, IAB investigations of brutality allegations similarly seldom lead to administrative trials, and when they do, and the charges are somehow sustained, the punishment is minimal, lacking and any realistic deterrent effect.   Since there is no disciplinary sanction available between thirty days' suspension and dismissal, and dismissal is almost always deemed too harsh, even the most brazen acts of brutality, short of murder, are resolved with the administrative equivalent of a slap on the wrist.

174.   The City has been on notice for generations that brutality is widespread and that particular reforms need to be implemented.  From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD.   In 1994, the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well. This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." *Mollen Comm.* Report at p. 49.

175.   Upon information and belief, it was the policy and/or custom of the City and NYPD to supervise and discipline officers inadequately, including the defendant officers herein, thereby failing to discourage constitutional violations on the part of its police officers.

176.   Upon information and belief, the policy of the City is to give police officers suspected of criminally assaulting a civilian a special break – the "48 hour rule."  In the last thirty (30) years, hundreds of civilians have been fatally wounded by police action but only a handful of police officers have been convicted for on duty killings since 1977.  The police

indicted for serious brutality are a meager few; those convicted can be counted on one's hands, and those convictions have arisen only in the cases of nearly inconceivable instances of depravity.

177. The "48 hour rule" delays questioning of police suspects for two (2) business days, a privilege that no other criminal suspect in New York enjoys and that no other police suspect in any other major city in the nation can hide behind. Moreover, it requires that when the target officer is notified, a PBA representative must be present. The PBA representatives, who are almost always members of the NYPD, hear confessions and admissions of brutality and then conceal them from the Department, a practice condoned by the Department even though the rules and regulations of NYPD explicitly prohibit it. Additionally, upon information and belief, the PBA representatives routinely utilize the 48 hours afforded by this rule to assist target officers in conspiring to cover up their crimes and misconduct and thus avoid detection and punishment.

178. Although the "48 hour rule" is only supposed to apply to administrative investigations, it is the City's custom to apply it to criminal investigations as well. Moreover, the 48 hour delay is expressly limited to targets: mere witnesses are to be accorded a four (4) hour grace period. The custom, however, is to allow the PBA representative instead of the IAB to decide who is a target and who is a witness.

179. Upon information and belief, to the extent that any legitimate investigation was ever undertaken, it is believed that the 48 hour rule prevented evidence and/or information to be collected from John Does 1, 2 or 3 before these officers had an opportunity to enter into a conspiracy of silence and to destroy material evidence that would confirm John Doe 2's assault on plaintiff DePasquale.

180.    Police officers of the NYPD have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward and/or failing to provide accurate evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence" and "blue wall".

181.    This "code of silence" is a custom deeply ingrained in the members of the NYPD so as to constitute the actual functional policy of the City of New York.

182.    The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers who are aware of and subsequently conceal and/or aid and abet violations of the constitutional rights of citizens by other NYPD officers, thereby causing and encouraging NYPD officers, including the individual defendants in this case, to violate the rights of citizens such as DePasquale and Rivera, plaintiffs herein.

183.    Upon information and belief, the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers.  This failure to identify and track such officers, including the defendant officers herein, or to discipline, more closely supervise, or retrain such officers who engage in conduct to preserve the "code of silence", causes NYPD officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene nor give evidence against them.  These systemic deficiencies include but are not limited to:

  a.  Preparation of investigate reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

b. Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

c. Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

e. Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence;

f. Structuring and approaching investigations in a manner that subjects the complainants who report instances of police brutality to the same sort of treatment, including aggressive interrogation, more typically reserved for criminal suspects than the victims of criminal conduct; and

g. Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

184.    The City and NYPD and each of them, prior to and at the time of the Attack described herein, as well as during the course of the subsequent cover-up of the Attack, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice and follow the "code of silence", but the City was deliberately indifferent to that need.

185.    The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens such as plaintiffs here, and the need for more or different training and discipline are policies, practices, and customs of the City and have caused police officers, including the officer defendants in this action, to believe that they can violate the rights of citizens, including plaintiffs herein, with impunity, and that their fellow officers would

conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

186.    As a direct and proximate result of the City's and NYPD's deliberate indifference, defendants violated the rights of plaintiffs DePasquale and Rivera, and each of them, resulting in substantial damages to each of them.

187.    Plaintiffs each claim damages for the injuries set forth above.

COUNT XIII
PENDENT CLAIM OF GROSS NEGLIGENCE AND NEGLIGENCE (DePasquale and Rivera)

188.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

189.    Defendants City, NYPD and John Does 13-20 and each of them has been grossly negligent and negligent in the supervision, training and monitoring of NYPD officers, including John Does 1, 2 and 3, as well as John Does 4-12, with respect to each officer's obligation to report and respond to crimes and misconduct by their fellow officers.

190.    Defendants City, NYPD and John Does 13-20, have a duty to make reasonably sure that line officers, such as John Does 4-12 herein, do not violate their duties as police officers to report crimes and misconduct by fellow officers.

191.    Defendants City, NYPD and each of them each has been grossly negligent and negligent in the instruction and training it provides to NYPD officers with respect to their responsibilities to report crimes or misconduct by other police officers.

192.    NYPD and the City have each been on notice for many years that NYPD officers regularly obstruct criminal investigations of NYPD officers suspected of engaging in criminal misconduct and/or violation of the legal rights of civilians.

193.    NYPD and the City knew or should have known that its policies and practices have contributed to improper concealment of admissions by police officers to PBA representatives and a "code of silence" being followed by police officers to cover up crimes and misconduct.

194.    NYPD and the City knew or should have known that its policies and practices, as well as its grossly negligent and negligent supervision and training of NYPD supervisory officers and IAB investigators created an atmosphere where the most violent police officers felt assured that their most brazen acts of misconduct and brutality would escape swift and/or effective investigation and ultimately avoid prosecution entirely.

195.    The mistreatment and brutality experienced by plaintiffs DePasquale and Rivera, and the subsequent failure to investigate and ease of cover-up of those events, were reasonably foreseeable results of the City's and NYPD's negligent conduct.

196.    Plaintiffs each claim damages for the injuries set forth above.

COUNT XIV
PENDENT CLAIM OF ASSAULT AND BATTERY (DePasquale)

197.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

198.    By their actions, as set forth above, defendants John Doe's 1, 2 and 3, individually and acting in concert, committed atrocious acts of battery against plaintiff DePasquale, which included pistol-whipping him, beating and kicking him about the face and body without cause,

threatening to kill him, fracturing his jaw, causing permanent loss of several teeth and inflicting permanent and disfiguring injuries to his face and jaw. This use of physical force was patently unnecessary, lacked any rational explanation whatsoever and was excessive by any civilized standard.

199.    By their actions, as set forth above, defendants John Doe's 1, 2 and 3, individually and acting in concert, committed atrocious acts of battery against plaintiff Rivera, which included beating him, throwing him to the ground, terrorizing him, harassing him, and repeatedly threatening to kill him and directing threats against his friend, DePasquale. This use of physical force and overall course of conduct was patently unnecessary, lacked any rational explanation whatsoever and was excessive by any civilized standard.

200.    Upon information and belief, the City is legally responsible for the excessive and unnecessary physical force used and course of abusive conduct by the aforesaid defendants because this force and conduct occurred while each defendant was acting in the scope of his employment as an NYPD officer, and it was foreseeable that this misconduct would occur.

201.    As a result of the aforesaid threats, abusive conduct, and outright assault, plaintiffs have each suffered severe and permanent physical and mental injuries.

202.    Plaintiffs each claim damages for the injuries set forth above.

## COUNT XV
## PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

203.    Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

204.    Plaintiff Rivera was wrongfully, unlawfully and justifiably seized, handcuffed, taken into custody, deprived of liberty and transported against his will by defendants John Doe's 1, 2 and 3.

205.   At all relevant times, the aforesaid officers acted forcibly and with threat of deadly force in seizing plaintiff Rivera.

206.   The aforesaid seizure was wrongful, unlawful, and carried out without a warrant, probable cause, or any legal justification whatsoever.

207.   After his seizure, plaintiff Rivera was wrongfully harassed, threatened, and subjected to a course of barbarous and inhumane treatment.

208.   At all times mentioned, the unlawful, wrongful and false arrest and imprisonment of Rivera was without right or probable cause, and was forcible and against his will.

209.   All the foregoing occurred without any fault or provocation on the part of plaintiff Rivera.

210.   At all relevant times, defendants John Doe's 1, 2 and 3, who were immediately responsible for the false arrest and imprisonment of plaintiff Rivera, were employees of NYPD and the City, and were acting for, upon and in furtherance of the business of their employers and within the scope of their employment.

211.   As a result of the aforesaid false arrest and imprisonment, plaintiff Rivera was subjected to humiliation, ridicule, and disgrace, as well as extreme mental distress and emotional injury.

212.   Plaintiffs each claim damages for the injuries set forth above.

## COUNT XVI
## PENDENT CLAIMS OF INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

213.   Plaintiffs repeat, re-allege and reiterate each foregoing paragraph and incorporate same by reference herein as though more fully set forth at length.

214.    In the course of seizing plaintiff Rivera, and thereafter, defendants embarked on a malicious, willful and grossly negligent course of conduct intended to cause plaintiff Rivera to suffer extreme mental and emotional distress, agony and anxiety.

215.    In the course of inflicting grievous bodily harm upon plaintiff DePasquale, and thereafter, defendants embarked on a malicious, willful and grossly negligent course of conduct intended to cause plaintiff DePasquale to suffer extreme mental and emotional distress, agony and anxiety.

216.    One objective of the aforesaid extreme and outrageous course of conduct was to inflict severe mental and emotional distress upon plaintiffs so as to intimidate, terrify, and dissuade each of them from exposing the vicious assault and overall course of unlawful conduct by John Doe's 1, 2 and 3.

217.    The aforesaid acts of intentional and reckless infliction of emotional and mental distress by defendants constitutes misconduct of an egregious character that exceeds all bounds usually tolerated by a civilized society.

218.    Plaintiffs each claim damages for the injuries set forth above.

**WHEREFORE,** plaintiffs request the following relief jointly and severally as against all of the defendants:

A.    Award compensatory damages in an amount to be determined at trial;

B.    Award punitive damages in an amount to be determined at the time of trial;

C.    Award disbursements, costs and attorneys fees pursuant to 28 U.S.C. § 1988 in an amount to be determined by the within Honorable Court following trial; and

D.    Granting such other, further and different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs and each of them respectfully request trial of all matters herein before a jury.

Dated: Bronx, NY
       March 29, 2013

                           LAW OFFICE OF
                           HERIBERTO J. RODRIGUEZ, PLLC

                    By

                           Heriberto J. Rodriguez, Esq.
                           Attorneys for Plaintiffs
                           1378 White Plains Road
                           Bronx, NY 10462
                           (718) 792-7100